**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEON J. HOWARD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-5140 |
| | : | |
| WELLPATH, LLC, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**SCHMEHL, J.**                                                                **MARCH 30, 2026**

Plaintiff Leon J. Howard, an inmate incarcerated at SCI Phoenix, filed this *pro se* civil

rights action against Defendants Wellpath, LLC ("Wellpath"), Wellpath Medical Director Dr.

Anthony Letizio, Chief Healthcare Administrator Britney Huner, and Wellpath Program

Managers Jackie Woods and Dawn Menya.[1]  The individual Defendants work at SCI Phoenix

and are sued in their individual capacities.  Howard alleges, *inter alia*, that the Defendants

violated his Eighth Amendment rights because they conspired together to delay and deny

medical treatment for a degenerative disc in his lower spine.[2]  All Defendants have filed Motions

to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF Nos. 13, 14), and

Defendant Wellpath filed an Amended Motion to Dismiss.  (ECF No. 44.)  Howard responded to

---

[1] In his Complaint, Howard identities Woods as "Ms. Woods," Menya as "Ms. Menya," and spells Huner's first name "Brittany."  In their Motion to Dismiss, Ms. Woods and Ms. Menya clarified their first names, which are Jackie Woods and Dawn Menya.  (*See* ECF No. 13 at 1.)  Huner clarified in her Motion to Dismiss that her first name is spelled Britney, not Brittany.  (*See* ECF No. 14 at 3.)  The Court will direct the Clerk of Court to update the docket to accurately reflect their names.

[2] Howard initially alleged a violation of his Fourteenth Amendment rights, but conceded that such claim was inapplicable to his case and withdrew it.  (*See* ECF No. 16 at 4; ECF No. 19 at 6.)

Defendants' initial Motions (ECF Nos. 16, 19), but did not respond to Wellpath's Amended Motion.[3]  Wellpath, Dr. Letizio, Woods, and Menya replied to Howard's response (ECF No. 20), and Howard filed a Sur-Reply thereto (ECF No. 23).  For the following reasons, Defendant Huner's Motion to Dismiss (ECF No. 14) will be granted, the Motion to Dismiss (ECF No. 13) filed by Wellpath, Dr. Letizio, Woods and Menya will be granted in part and denied in part, and Wellpath's Amended Motion to Dismiss (ECF No. 44) will be denied.

## I.    FACTUAL ALLEGATIONS[4]

Howard, an inmate at SCI Phoenix at all times relevant to his claims, (Compl. at ¶ 7), alleges he has "suffered from degenerative disc disease in his lower spine for approximately thirty-years and now needs spinal surgery to alleviate the sever chronic pain." (*Id*. at ¶ 13.) After going to a sick call for his back pain on January 4, 2021, he asserts SCI Phoenix medical staff took an X-ray of his lower spine in February 2021.[5]  (*Id*. at ¶¶ 14-16.)  He claims the X-ray

---

[3] After the initial motions to dismiss were filed and still pending, Wellpath filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, after which this Court entered an Order staying this case.  (ECF No. 38.)  Following the confirmation of Wellpath's plan of reorganization on May 1, 2025, the Court lifted the stay on August 7, 2025.  (ECF No. 41.)  Wellpath subsequently filed an amended motion to dismiss based on the argument that its discharge in the Bankruptcy Court requires this Court to dismiss Howard's claim against it with prejudice because the claim predates its bankruptcy petition.  (ECF No. 44.)  In an Order dated September 3, 2025, the Court ordered Howard to respond to the amended motion by September 29, 2025.  (ECF No. 45.)  To date, Howard has not filed a response and Wellpath has requested this Court to rule on its amended motion as unopposed.  (ECF Nos. 47, 49.)  The Court notes that because it appears the basis for the amended motion raised by Wellpath was not available when motions pursuant to Federal Rule of Civil Procedure 12 were previously filed in this case, it is allowed to raise this newly available defense at this stage of the proceedings.  *See* Fed. R. Civ. P. 12(g)(2).

[4] The factual allegations set forth in this Memorandum are derived from Howard's Complaint ("Compl.") (ECF No. 2).  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[5] The timeliness of Howard's § 1983 claims are governed by Pennsylvania's two-year statute of limitations.  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  A claim accrues "when a plaintiff has a

revealed separation of the disc in his lower spine, and he was subsequently scheduled for a magnetic resonance imaging ("MRI") appointment at Einstein Hospital.  (*Id*. at ¶¶ 16-17.)  After the MRI, Howard was seen by a neurosurgeon and nurse practitioner at Einstein Hospital in April 2021, who he alleges recommended pain management injections (the "injections"), or spinal surgery if the injections were ineffective.  (*Id*. at ¶ 18.)  Howard alleges he had a follow-up appointment on October 13, 2021, with a neurologist at Temple Hospital to discuss the injections, but the neurologist said the appointment would need to be rescheduled because the medical staff at SCI Phoenix had not provided Howard's medical records to the hospital.  (*Id*. at ¶ 19.)  He found out at a sick call on November 18, 2021, that his follow-up appointment with the neurologist had not been rescheduled, so he filed a grievance two days later related to the failure to reschedule the appointment.  (*Id.* at ¶¶ 20-21).  Howard alleges that his grievance was granted in part on December 6, 2021, and stated that Defendants Woods and Huner "have been made aware for fulfillment of resolution."  (*Id*. at ¶ 22.)  Howard claims he confirmed at a sick call on February 28, 2022, that his follow-up appointment was not rescheduled yet, so he filed a second grievance shortly after, which was denied because the rescheduling was "being reviewed and resolved."  (*Id.* at ¶¶ 23-25).

On June 27, 2022, Howard went to a sick call for his lower back pain and alleges that a member of the medical staff told him that she discussed rescheduling his follow-up appointment with Dr. Letizio, who stated to her that "he was not going to schedule [Howard] for neurology."

---

complete and present cause of action, that is, when [he] can file suit and obtain relief."  *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted).  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based."  *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).  Howard dated his Complaint on December 17, 2023.  (*See* Compl. at 9.)  Therefore, the factual allegations prior to December 17, 2021, appear to be untimely, and the Court includes these facts for context only.

(*Id.* at ¶ 26.)  On July 10, 2022, Howard filed a third grievance for the delay in scheduling his follow-up appointment.  (*Id.* at ¶ 27.)  Howard claims that on August 11, 2022, his third grievance was granted in part and stated, "Resolution to rescheduling appointment as soon as possible for plan of care. Wellpath Program Manager Ms. Menya and CHCA Huner made aware."  (*Id.* at ¶ 28.)  On January 3, 2023, Howard was seen by a member of the medical staff, who confirmed his follow-up appointment was scheduled.  (*Id.* at ¶ 30.)

On May 16, 2023, Howard received the injection into his lower spine at Temple Hospital. (*Id.* at ¶ 31.)  A week later, Howard went to a sick call because the injection did not work and confirmed a follow-up neurology appointment had not been scheduled.  (*Id.* at ¶ 32.)  On June 30, 2023, Plaintiff went to a sick call to ask again about his follow-up appointment, which he alleges had still not been rescheduled.  (*Id.* at ¶ 33.)

Howard alleges that he was deprived of his Eighth Amendment right to adequate medical care for spinal surgery, a serious medical need, because the individual Defendants conspired together to delay his "necessary medical treatment for one-and-a-half years for non medical reasons" intentionally denying his follow-up treatment "knowing the injections are a prerequisite in order to have spinal surgery."  (*Id.* at ¶¶ 37, 42.)  Howard also alleges a state law negligence claim for failure to comply with medical standards of care in his medical treatment.  (*Id.* at ¶¶ 50-53.)  He further claims Wellpath, the medical services contractor for SCI Phoenix, (*id.* at ¶ 8), is liable for the violations of his civil rights "due to its custom of inadequately supervising and training their employees, their unwritten policy and/or custom," and its knowledge of the deprivation of his rights.  (*Id.* at ¶ 53).  Howard seeks compensatory and punitive damages for his claims.  (*Id.* ¶¶ 54-57.)

4

## II.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendant's burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro* se litigant states a claim, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.    DISCUSSION

Howard asserts claims based on alleged violations of his constitutional rights, as well as violations of state law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also, e.g., Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

In their respective Motions, Huner, Woods and Menya argue the Eighth Amendment claims against them should be dismissed for failure to state a claim because they are not medical providers and cannot be held liable for deliberate indifference to a serious medical need.  Dr. Letizio argues that the § 1983 claims against him are subject to dismissal because Howard failed to allege facts to state a plausible Eighth Amendment claim based on deliberate indifference to a serious medical need.  Dr. Letizio also argues the professional negligence claims under state law should be dismissed because Howard failed to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.[6]  The individual Defendants further argue Howard failed plausibly to allege a conspiracy.[7]  Lastly, Wellpath argues in its initial Motion that claims

[6] The Court notes Dr. Letizio incorrectly referred to Pennsylvania Rule of Civil Procedure 1043.3, instead of 1042.3, which appears to be a typographical error.

[7] Howard attempts to bring a § 1983 conspiracy claim based his allegation that Defendants conspired together to delay and deny his medical treatment.  (*See* Compl. at ¶ 37 (alleging the "foregoing conduct of the Medical Defendants . . . was undertaken in concert and conspiracy and as part of an effort to unlawfully deny [Howard] medical treatment. . . .").)  This is the only allegation concerning conspiracy contained in the Complaint.  As an initial matter, a "bare assertion of conspiracy" such as the one here does not suffice to state a claim.  *Twombly*, 550 U.S. at 556.  Rather, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  Howard has not pleaded any facts that plausibly suggest a meeting of the minds between Defendants.  *See Twombly,* 550 U.S at 556 (holding that a plaintiff claiming conspiracy must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").  Howard has failed to allege any facts to support a conspiracy, such as the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy.  *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000); *Great W. Mining,* 615 F.3d at 179 (holding that conspiracy claim was not plausible where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy").  Howard's conclusory allegations merely assume the existence of a conspiracy rather than alleging facts to plausibly assert one and therefore do not state a claim for conspiracy under § 1983.

against it should be dismissed because it cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability, and Howard failed to allege a relevant policy or custom that caused the constitutional violations he alleges.  In its Amended Motion, Wellpath argues that its discharge in the Bankruptcy Court requires this Court to dismiss Howard's claim with prejudice because the claim predates its bankruptcy petition.

### A.       Failure to State an Eighth Amendment Claim

To state a constitutional claim under the Eighth Amendment based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058 2023 WL 5814664 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Brown*, 903 F.2d at 278 ("While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

### 1. Defendants Woods, Menya, and Huner

Woods, Menya, and Huner (collectively, the "non-provider Defendants") argue that they are not medical providers. (*See* ECF No. 13 at 13 (Woods and Menya); ECF No. 14 at 15 (Huner).) They assert that the Eighth Amendment claims against them should be dismissed because, as non-providers, they cannot be held liable for deliberate indifference to a serious medical need and their only involvement with Howard concerned grievances he filed. (*Id*.) These claims will be dismissed.

Howard alleges that the response to his first grievance stated that Huner and Woods were made aware that his appointment was not rescheduled. (Compl. at ¶ 22.) The response to his

9

third grievance on August 11, 2022, stated that Huner and Menya were made aware of the rescheduling issue.  (*Id*. at ¶ 28.)  To the extent Howard asserts claims based on the handling of his grievances, those claims fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances.") (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  Moreover, a prison official's involvement in the grievance process, alone, is not actionable under § 1983.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").  Any claims based on grievances will be dismissed with prejudice.

Claims based on inadequate medical care against the non-provider Defendants also fail because Howard alleges that he is under the care of medical staff at SCI Phoenix.  (*See* Compl. at ¶¶ 3, 26, 30.)  Courts have held that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F.

App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Thus, the deliberate indifference claim against the non-provider Defendants are not plausible and their motion to dismiss this claim will be granted.[8]

### 2. Defendant Dr. Letizio

Howard alleges that he went to a sick call on June 27, 2022, for his lower back pain and a member of the medical staff told Howard that she discussed rescheduling his follow-up appointment with Dr. Letizio, who stated to her that "he was not going to schedule [Howard] for neurology." (Compl. at ¶ 26.) The deliberate indifference claim based on this allegation, accepted as true, will be permitted to proceed because it is sufficient to allege a denial of treatment to support a plausible deliberate indifference claim, since it indicates that Dr. Letizio was aware of Howard's need for further treatment, which was to see a neurologist due to a serious medical need, and he denied Howard such treatment. Therefore, the deliberate indifference claim, and related state law claims,[9] against Dr. Letizio will be permitted to proceed to discovery.

---

[8] To the extent Howard intended to bring a professional negligence claim under state law against the non-provider Defendants, any such claim will also be dismissed because they are not licensed medical providers. *See* Pa. R. Civ. P. 1042.3(a) ("In any action based upon an allegation that *a licensed professional* deviated from an acceptable professional standard…") (emphasis added); *see also, e.g., Rightmyer v. Philly Pregnancy Ctr., P.C.,* No. 23-1925, 2024 WL 896571, at *3 (E.D. Pa. Mar. 1, 2024) ("As a licensed registered nurse and not a licensed physician, Ms. Swann does not meet the substantive requirements of § 1303.512 and, thus, her [Certificate of Merit] does not meet the requirements of Pennsylvania Rule 1042.3.").

[9] Dr. Letizio also argues that the professional negligence claims under state law should be dismissed because Howard failed to file a certificate of merit ("COM") as required by Pennsylvania Rule of Civil Procedure 1042.3. However, the Rule provides that a defendant may not seek dismissal of a professional negligence claim based on the lack of a COM unless

**B.      Claims Against Wellpath**

Although a private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances, the United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). Rather, to hold a private health care company like Wellpath liable for a constitutional violation under § 1983, Howard must allege Wellpath had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)). A plaintiff may also state

---

they have provided thirty days' notice *prior to* seeking dismissal. *See* Pa. R. Civ. P. 1042.7(a)(4) (requiring defendant to file a praecipe to dismiss "no less than thirty days after the date of the filing of the notice of intention to enter the judgment of non pros"). In federal court, this requires providing the plaintiff with prior notice before seeking dismissal. *See Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court. Uchal was therefore required to provide Schmigel with notice *before* he had a right to dismiss this action, and his failure to do so requires reinstatement of this action in the District Court.") (emphasis added). Since the docket does not reflect that Dr. Letizio provided notice to Howard under Rule 1042.7, and there is no indication otherwise on the record that he was provided such noticed before filing his Motion, the motion to dismiss this claim will be denied.

a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom., Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

Howard makes only vague, generalized, and conclusory allegations that are entirely insufficient to support his claim against Wellpath.  He claims Wellpath, as the medical services contractor for SCI Phoenix, (Compl. at ¶ 8), is liable for the violations of his civil rights "due to its custom of inadequately supervising and training their employees, their unwritten policy and/or custom," and its knowledge of the deprivation of his rights.  (*Id*. at ¶ 53).  However, he fails to identify the specific policy or custom of Wellpath he is referring to, which is fatal to his claim.  *See Groman v. Twp. of Manalapan*, 47 F .3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient).  He also does not allege how the unidentified policy or custom caused a constitutional violation.  Accordingly, Howard's claims against Wellpath are not plausible as pled and will be dismissed without prejudice.  However, the Court will permit amendment of this claim as well since Howard may be able to cure this defect and Wellpath's alternate argument for dismissal in its Amended Motion must be denied for the following reasons.

Wellpath argues in its Amended Motion that its discharge in the Bankruptcy Court requires this Court to dismiss Howard's claim against it with prejudice because the claim

predates its bankruptcy petition.  (ECF No. 44 at 1.)  Specifically, Howard filed this case on December 27, 2023, and Wellpath filed its Chapter 11 petition on November 11, 2024.  (*Id.*) Wellpath argues that, pursuant to the Plan of Reorganization approved by the Bankruptcy Court, it and its affiliated debtors were discharged, and the holders of prepetition claims, like Howard, were permanently enjoined from continuing those claims or enforcing recovery from the Debtors.  (*Id.* at 2.)  Wellpath notes that "holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of [Wellpath]."  (*Id.* at 4.)  Wellpath conceded in a Status Report that Howard has filed an opt out of the third-party release.  (ECF No. 43 at 1.)  Based on this concession, the Court takes judicial notice that Howard has filed a proof of claim against Wellpath in the bankruptcy proceedings.

Wellpath also states in its Amended Motion to Dismiss that a Liquidating Trust has assumed its liability "for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date."  (ECF No. 44 at 4) (citation omitted).) Wellpath notes that "recoveries on such claims are limited to a pro-rata distribution from the Trust," and that litigants "may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution."  (*Id.* (citation omitted).)  Wellpath asserts that "Holders of Claims against [Wellpath] are subject to the Trust Distribution Procedures ('TDPs'), including the non-binding alternative dispute resolution [("ADR")] process set forth therein to determine, if necessary, the allowed amount for their Claim."  (*Id.* at 4-5 (citing General Form of Order Regarding Lift Stay Motions, Bankr. S.D. Tx. No. 24-90533, Dkt. No. 2907, at 2 (attached as Exh. 3., ECF No. 44-3 at 2)).)

14

Wellpath's argument omits the very next clause of the Bankruptcy Court Order to which it cites: "Such holders of personal injury tort and wrongful death claims may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party (a) to the extent such inclusion is necessary to recover against available third-party insurance proceeds or an unreleased Non-Debtor Defendant, or (b) to establish or liquidate the amount of their claim for distribution under the Plan from the Liquidating Trust." (*Id*.)  The Court takes judicial notice of the ongoing motions practice in the Bankruptcy Court concerning the meaning of this provision.  *See* Bankr. S.D. Tx. No. 24-90566, Dkt. Nos. 592, 690, 750, 805, 846, 919.  Specifically, litigants in a position similar to Howard argue that, based on the confirmed plan and representations made throughout the bankruptcy proceedings, "[p]ersonal injury and wrongful death claims against Wellpath may be liquidated in the existing forum, provided that any payment resulting from judgment, other than from available insurance, [has] to be through the claims process," and "[p]ersonal injury and wrongful death claimants do not need to go through the nonbinding ADR process before continuing their litigation in the existing forum."  *Id.*, Dkt. No. 805, at 12 (citations omitted).

These issues have previously arisen in the United States District Court for the Eastern District of Pennsylvania.  Judge Marston recently considered Wellpath's motion to dismiss a plaintiff's claims based on the bankruptcy court's discharge in a similar situation, and the plaintiff's contention that he could proceed against Wellpath as a nominal defendant to establish its liability and recover available third-party insurance proceeds.  *See generally* Order, *Wallace v. Wellpath, LLC*, No. 24-3485, ECF No. 36 (Aug. 27, 2025).  Judge Marston determined that the plaintiff's attempt to proceed against Wellpath in that capacity did not violate the discharge

15

injunction under 11 U.S.C. § 524(a)(2), and was consistent with § 524(e), the terms of the Plan, and the Bankruptcy Court's orders enforcing the plan. *See id.* Judge Marston found that while § 524(a)(2) operates as an injunction against an action to collect, recover, or offset a debt as the personal liability of a debtor, that phrase "has been interpreted to exclude nominal liability." (*Id.* at 2-3 (citing *In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993)). Thus, she determined (citing the same bankruptcy court order attached to Wellpath's Motion, discussed above), that holders of personal injury tort claims against Wellpath may seek determinations of its liability by bringing a claim against the Liquidating Trust as a nominal party to recover against available third-party insurance proceeds or an unreleased non-debtor Defendant, or to establish or liquidate the amount of the claim for distribution under the Plan from the Liquidating Trust in certain circumstances. (*Id.* at 3-4.) Citing a subsequent bankruptcy court order, she also held that holders of personal injury tort claims against Wellpath may proceed against it as a nominal defendant in the court where such claims are pending. (*Id.* at 4 (citation omitted).) Accordingly, she permitted the plaintiff to proceed against Wellpath as a nominal defendant, holding that to do so did not violate the discharge injunction under § 524(a)(2) and was consistent with the terms of the Plan under § 524(e). (*Id.*)

Adopting Judge Marston's reasoning, and in recognition of the ongoing bankruptcy proceedings, Wellpath's Amended Motion to Dismiss will be denied. However, the Court notes that, pending further orders from the Bankruptcy Court, it may be necessary to revisit Wellpath's continued presence as a Defendant in this case and the possibility of dismissal or substitution of the Liquidating Trust. Should supplementary briefing on this issue be required, the Court will issue further orders.

**IV.    CONCLUSION**

For the foregoing reasons, Huner's Motion to Dismiss will be granted, and Wellpath's Amended Motion to Dismiss based on the argument that its discharge in the Bankruptcy Court requires this Court to dismiss Howard's claim against it with prejudice because the claim predates its bankruptcy petition will be denied.  The Motion to Dismiss filed by Wellpath, Dr. Letizio, Woods and Menya will be granted in part and denied in part.  The motion will be denied as to the medical indifference and state law negligence claims against Dr. Letizio, and those claims will be permitted to proceed to discovery.  The motion will be granted as to the medical indifference and professional negligence claims against Woods and Menya, and any claims based on grievances, and those claims will be dismissed with prejudice.  The motion will also be granted as to the conspiracy claims and the claims against Wellpath, and those claims will be dismissed without prejudice.  Howard will be given one opportunity to file an amended complaint if is he capable of curing the defects the Court has identified in the claims dismissed without prejudice only, which are the claims against Wellpath and the conspiracy claims against Dr. Letizio, Huner, Woods, and Menya.  Howard may not reassert any claim that has already been dismissed with prejudice.

An appropriate Order, which provides further instruction about amendment and directs Dr. Letizio to file an answer to the Complaint, will be entered separately.

**BY THE COURT:**

/s/ Jeffrey L. Schmehl
**JEFFREY L. SCHMEHL, J.**

17
